**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
ALFONSO HARRELL, on behalf of himself and all  :
others similarly situated,                     :
                                               :        Case No.: 2:24-cv-10450
                   Plaintiffs,                 :
                                               :
              v.                               :
                                               :
THE MEN'S WEARHOUSE, LLC,                       :        CLASS ACTION COMPLAINT
                                               :                AND
                   Defendant.                  :        DEMAND FOR JURY TRIAL
                                               :
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

ALFONSO HARRELL (hereinafter "Plaintiff"), a New Jersey resident, brings this class complaint by and through the undersigned attorneys against Defendant The Men's Wearhouse, LLC, (hereinafter "Defendant"), for its violations of the Americans with Disabilities Act ("ADA"), individually and on behalf of a class of all others similarly situated.

## **INTRODUCTION**

1. This action arises from Defendant's failure to make its digital properties accessible to legally blind individuals, which violates the effective communication and equal access requirements of Title III of the Americans with Disabilities Act ("ADA").

2. It is estimated that 2.5 percent of the American population lives with some sort of visual disability. See Erickson, W., Lee, C., von Schrader, S., Disability Statistics from the American Community Survey (ACS). Ithaca, NY: Cornell University Yang-Tan Institute

(YTI), available at https://www.disabilitystatistics.org/acs/1 (last accessed September 27, 2023).

3.   In a September 25, 2018 letter to U.S. House of Representative Ted Budd, U.S. Department of Justice Assistant Attorney General Stephen E. Boyd confirmed that public accommodations must make the websites they own, operate, or control equally accessible to individuals with disabilities. Assistant Attorney General Boyd's letter provides:

> The Department [of Justice] first articulated its interpretation that the ADA applies to public accommodations' websites over  20years ago. This interpretation is consistent with the ADA's title III requirement that the goods, services, privileges, or activities provided by places of public accommodation be equally accessible to people with disabilities.[1]

4.   For this significant portion of Americans, accessing websites, mobile applications, and other information via their computers and smartphones has become critical, especially in the post-pandemic era. Since the pandemic, U.S. e-commerce has continued to grow, with 12 million new users choosing to shop online since 2020. 1 According to a recent study, e- commerce increased by 25% from $516 billion (11.1% of total retail sales) to $644 billion (14.2% of total retail sales).2 This underscores the importance of access to online retailers. When Congress enacted the ADA in 1990, it intended for the ADA to keep pace with the rapidly changing technology of our times. Since 1996, the Department of Justice has consistently taken the position that the ADA applies to web content. "For people with disabilities, website accessibility and other forms of accessible ICT are necessities—not luxuries or conveniences—that foster independence, economic self-sufficiency and active, meaningful participation in civic life." Americans regularly depend upon websites, mobile applications and other devices as a nexus between the digital medium and the brick-and-mortar locations.

5.  During these challenging times, disabled individuals rely heavily on acquiring goods and services from the internet. With more businesses choosing to market their goods and services on their online platform, access to the website is vital. Sir Tim Berners-Lee, the founder of the World Wide Web, wrote, "The power of WWW is in its universality. Access by everyone regardless of disability is an essential aspect."

6.  The blind have an even greater need than the sighted to have access to various websites in order to compare merchandise, benefits and prices, to get more information about the companies, their locations and hours of operation. The lack of an accessible website deters blind people from visiting Defendant's physical location and enjoying the unique services that it provides to the public.

7.  In this climate, it is especially important to consider factors that can facilitate or impede technology adoption and use by people with disabilities.

8.  When the digital content is not universally accessible to everyone, legally blind individuals must unnecessarily expend additional time and effort to overcome communication barriers sighted users do not confront. These barriers may require the assistance of third parties or, in some cases, may deny outright access to the online service.

9.  Screen access "software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at *6 (E.D.N.Y. Dec. 21, 2017) (J. Weinstein).

> The screen reading software uses auditory cues to allow a visually impaired user to effectively use WEBSITEs. For example, when using the visual internet, a seeing user learns that a link may be "clicked," which will bring his to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's

cursor hovers over the link, it changes from an arrow symbol to a hand.

The screen reading software uses auditory—rather than visual—cues to relay this same information. When a sight impaired individual reaches a link that may be "clicked on," the software reads the link to the user, and after reading the text of the link says the word "clickable." Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a WEBSITE by listening and responding with his keyboard.

10. The United States Department of Justice Civil Rights Division has provided "Guidance on Web Accessibility and the ADA."[5] It states in part, "the Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."

11. Because Defendant's website, https://menswearhouse.com, (the "Website" or "Defendant's website"), is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers. Defendants Website, and its online information, is heavily integrated with its brick-and-mortar locations.

12. Accessibility is all or nothing. A website is either accessible or inaccessible. This lawsuit is aimed at providing legally blind users like Plaintiff a full and equal experience.

## **NATURE OF ACTION**

13. Plaintiff brings this civil rights action, individually and on behalf of those similarly situated, seeking redress for Defendant's actions which violate the ADA.

14. Plaintiff, like approximately 2.0 million other people in the United States, is visually impaired and legally blind.

15.   Upon visiting Defendant's website, Menswearhouse.com, Plaintiff quickly became aware of Defendant's failure to maintain and operate its website in a way to make it fully accessible for himself and for other blind or visually-impaired people. The access barriers make it impossible for blind and visually-impaired users to enjoy and learn about the services at Menswearhouse.com prior to entering Defendant's physical location.

16.   The Internet has become a significant source of information, if not the most significant source, for conducting all types of necessary activities, such as banking and shopping.

17.   This is equally true for people with disabilities and those without disabilities.

18.   Fortunately, technology known as screen-reading software provides the blind and visually-impaired the ability to fully access websites and websites, and the information, products, goods and contained thereon.

19.   However, for screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

20.   The international website standards organization known throughout the world as W3C, has published guidelines that should be followed to ensure website accessibility. The most recent version, version 2.2, is referred to as the Web Content Accessibility Guidelines ("WCAG 2.2").

21.   Defendant's denial of full and equal access to its website, and therefore denial of its goods and the ability to frequent the physical locations and other services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

22.   Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies,

practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

23.  Plaintiff is a New Jersey resident, and the cause of action arose in New Jersey. As such, this Court has jurisdiction and venue over this action pursuant to R. 4:3-2

## PARTIES

24.  Plaintiff ALFONSO HARRELL is, and at all times relevant hereto has been, a resident of Essex County, New Jersey.

25.  Plaintiff is a blind, visually-impaired person and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101et seq.

26.  Plaintiff uses Windows operating system-enabled computer along with screen-reading software program Job Access With Speech, otherwise known as "JAWS", is currently one of the most popular, and downloaded screen-reading software programs.

27.  Defendant The Men's Wearhouse, LLC, is and was, at all relevant times herein, a Limited Liability Company with its principal place of business located at 6380 Rogerdale Road, Houston, TX 77072, and the registered agent address 1999 Bryan St. Suite 900, Dallas, TX, 75201. Defendant operates the Menswearhouse.com online retail store and advertises, markets, and operates in the State of New Jersey and throughout the United States.

28.  Defendant, The Men's Wearhouse, LLC, operates the Menswearhouse.com online retail store

across the United States. This online retail store constitutes a place of public accommodation. Defendant's Website provides consumers with access to an array of goods including information about purchasing apparel which Defendant offers in connection with their physical location and other products available online and to ascertain information including but not limited to pricing, shipping, ordering merchandise, club memberships, time-sensitive sales events and return and privacy policies and more, on their website.

29.   Consumers may purchase Defendant's products and access other content and services at Menswearhouse.com, the website Defendant owns, operates, and controls. The goods and services offered by Defendant's Website include men's clothing such as jeans, pants, shorts, shirts, sweaters, jackets, coats, boots, slippers, various accessories, as well as other types of goods, pricing, privacy policies and internet pricing specials. Also, consumers across the United States use Defendant's website to find the information about the store locations and hours of operation, as well as information about the goods, services, hours of operation and direction to its physical locations.

30.   In addition to researching and purchasing Defendant's products and services from the comfort and convenience of their homes, consumers may also use Defendant's website to contact customer service by phone and email, sign up to receive product updates, product news, and special promotions, review important legal notices like Defendant's Privacy Policy, and more.

31.   Defendant's website allows consumers to research and participate in Defendant's services and products from the comfort and convenience of their own homes.

32.   Consumers may use the website to connect with Defendant on social media, using sites like Facebook and Instagram.

33. Customers may find information about store locations and hours of operation, public transportation availability, as well as other information about the services in its physical locations.

34. Defendant's online retail store is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).2 Defendant's Website is a service, privilege, or advantage of Defendant's online retail stores.

35. Defendant is responsible for the policies, practices, and procedures concerning the WEBSITE's development and maintenance.

## STATEMENT OF FACTS

36. Defendant offers the commercial website, Menswearhouse.com, to the public. The Website offers features which should allow all consumers to access the goods and services offered by Defendant and which Defendant ensures delivery of such goods and services throughout the United States including New Jersey State. This website forms a nexus between online services and the Defendants' brick and mortar place of public accommodation.

37. Defendant's Website offers products and services for online sale and general delivery to the public. The Website offers features which ought to allow users to browse for items, access navigation bar descriptions, inquire about pricing, and avail consumers of the ability to peruse the numerous items offered for sale.

38. Plaintiff, ALFONSO HARRELL, has made an attempt to visit and use Menswearhouse.com. On September 28, 2024, he was searching online for new jeans, specifically aiming to find relaxed-fit jeans in classic style. While visiting Defendant's website, Menswearhouse.com, Plaintiff encountered various accessibility issues that disrupted his browsing experience. One

significant issue was that several links had unclear titles, making it difficult for Plaintiff to understand their purpose. The lack of clear descriptions for the links and their destination pages left him confused, preventing him from effectively navigating the site and completing his purchase. The Plaintiff acquired actual knowledge of and encountered multiple access barriers that denied Plaintiff a shopping experience similar to that of a sighted person and full and equal access to the goods and services offered to the public and made available to the public; and that denied Plaintiff the full enjoyment of the goods, and services of the Website by being unable to purchase  and other products available online and to ascertain information relating to pricing, shipping, ordering merchandise and return and privacy policies on their website. Plaintiff has also been deprived of the opportunity to enjoy the facilities, goods and services of Defendant's brick and mortar locations, as a result of accessibility barriers on Menswearhouse.com. Plaintiff would visit Defendant`s store more regularly if the website was accessible and the barriers were removed.

39.  Due to Defendant's failure to build the Website in a manner that is compatible with screen access programs, Plaintiff was unable to understand and properly interact with the Website and was thus denied the benefit of purchasing a pair of jeans, that Plaintiff wished to acquire from the Website. Plaintiff intends to frequent Defendant's physical location at 752 Shoppes Blvd, North Brunswick Township, NJ 08902 once the accessibility barriers are removed.

40.  The Website contains access barriers that prevent free and full use by the Plaintiff using keyboards and screen-reading software. These barriers include but are not limited to: inaccurate landmark structure, inaccurate heading hierarchy, ambiguous link texts, changing of content without advance warning, unclear labels for interactive elements, lack of alt-text on graphics, inaccessible drop-down menus, the lack of adequate labeling of form fields.

41. Among other accessibility issues encountered by Plaintiff when visiting the Defendant`s website are the following:

a) Landmark structure was incorrectly defined. Due to repetitive landmark labels, it was difficult for Plaintiff to understand the page section they led to;

b) Heading hierarchy was not properly defined, and there were missing heading levels. As a result, quick navigation through headings on the website did not help Plaintiff effectively find the content and understand the logical structure of the home page

c) Sub-menu elements with drop-down menus were inaccessible via keyboard. Plaintiff could not interact with sub-menus using "tab" or "arrow" keys. The website had device-specific functionality, like mouse-dependency, making it inaccessible to legally blind users;

d) The Navigation sub-menus with drop-down lists did not announce their state - "collapsed" or "expanded". Plaintiff could not determine in which part of the sub-menu the keyboard focus was located or if the links were skipped;

e) The interactive element on the web page did not announce its role and as a result, Plaintiff could not identify the purpose of the interactive element;

f) Several links had ambiguous texts that were unclear to Plaintiff. Lack of detailed description of the link target and destination page made it difficult for Plaintiff to perceive their purpose;

g) Plaintiff was forced to repeatedly tab through elements with the same destination: the link text of products conveyed similar information and led to the same destinations as interactive images above the links;

h) Plaintiff tried to follow the links from the website and received no prior warning that

the links opened new windows. As a result, Plaintiff unsuccessfully tried to use the "Back" function of the browser to go to the previous page and became disoriented;

i)  Interactive elements were not programmatically associated with their label tag elements. Plaintiff did not understand the purpose of the interactive element on the page as its name was not announced;

j)  Interactive elements on the web page had inappropriate and non-descriptive name. Plaintiff could not identify the purpose of the interactive element;

k)  Non-interactive elements were marked up as keyboard focusable (tabindex="0" was applied), and Plaintiff could not determine the purpose and function of the elements, since they were not actually interactive (did not have appropriate "role" attribute).

42.  These barriers, and others, deny Plaintiff full and equal access to all of the services the website offers, and now deter him from attempting to use the website to buy  Defendant's goods and services. Still, Plaintiff intends to attempt to access the website in the future to purchase the products and services the website offers and/or to test the website for compliance with the ADA.

43.  If the website was accessible, i.e. if Defendant removed the access barriers, Plaintiff could independently research and purchase Defendant's products and access its other online content and services.

44.  The law requires that Defendant reasonably accommodate Plaintiff's disabilities by removing these existing access barriers. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense.

45.  Plaintiff has been, and in the absence of an injunction will continue to be, injured by Defendant's failure to provide its online content and services in a manner that is compatible

with screen-reader technology.

46. The Plaintiff intends to immediately revisit the Website and to frequent the physical location to purchase a pair of jeans from the Defendant as soon as the access barriers are removed from the Website. Plaintiff also intends to visit the Defendant`s store to learn more information about the goods and services in its physical location.

<u>Defendant Must Remove Barriers To Its Website</u>

47. Due to the inaccessibility of Defendant's Website, blind and visually-impaired customers such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the goods, and services Defendant offers to the public on its Website. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from accessing the Website.

48. These access barriers on Defendant's Website have deterred Plaintiff from visiting Defendant's Website and enjoying it equal to sighted individuals because: Plaintiff was unable to use and enjoy the Website in the same manner as sighted individuals do, preventing Plaintiff from using the Website.

49. Through his attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired persons.

50. Because simple compliance with the WCAG 2.2 Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a.  Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff;

b.  Failure to construct and maintain a website that is not sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

c.  Failing to take actions to correct these access barriers in the face ofsubstantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

51.  Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

52.  The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

> 42 U.S.C. § 12188(a)(2).

53.  Because Defendant's Website is not and has never been fully accessible, and because, upon information and belief, Defendant does not have, and has never had, adequate corporate policies that are reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seek a permanent injunction requiring Defendant to:

> a)  Retain a qualified consultant acceptable to Plaintiff ("Web Accessibility Consultant") who shall assist in improving the accessibility of its Website, including all third-party content and plug-ins, so the goods and services on the Website may be equally accessed and enjoyed by visually-impaired persons;

> b)  Work with the Web Accessibility Consultant to ensure all employees involved in Website and content development be given web accessibility training

on a biennial basis, including onsite training to create accessible content at the design and development stages;

c)  Work with the Web Accessibility Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's Website may be equally accessed and enjoyed by visually-impaired persons on an ongoing basis;

d)  Work with the Web Accessibility Consultant to perform end-user accessibility/usability testing on at least a quarterly basis with said testing to be performed by humans who are blind or have low vision, or who have training and experience in the manner in which persons who are blind use a screen reader to navigate, browse, and conduct business on websites, in addition to the testing, if applicable, that is performed using semi-automated tools;

e)  Incorporate all of the Web Accessibility Consultant's recommendations within sixty (60) days of receiving the recommendations;

f)  Work with the Web Accessibility Consultant to create a Web Accessibility Policy that will be posted on its Website, along with an e-mail address, instant messenger, and toll-free phone number to report accessibility-related problems;

g)  Directly link from the footer on each page of its Website, a statement that indicates that Defendant is making efforts to maintain and increase the accessibility of its Website to ensure that visually-impaired persons have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Defendant's Website;

h)  Accompany the public policy statement with an accessible means of submittingaccessibility questions and problems, including an accessible form to submitfeedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

i)  Provide a notice, prominently and directly linked from the footer on each page of its Website, soliciting feedback from visitors to the Website on how the accessibility of the Website can be improved. The link shall provide a method to provide feedback, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

j)  Provide a copy of the Web Accessibility Policy to all web content personnel, contractors responsible for web content, and Client Service Operations call center agents ("CSO Personnel") for the Website;

k)  Train no fewer than three of its CSO Personnel to automatically escalate

calls from users with disabilities who encounter difficulties using the Website. Defendant shall have trained no fewer than 3 of its CSO personnel to timely assist such users with disabilities within CSO published hours of operation. Defendant shall establish procedures for promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance;

l)      Modify existing bug fix policies, practices, and procedures to include the elimination of bugs that cause the Website to be inaccessible to users of screen reader technology; and

m)      Plaintiff, his counsel, and their experts monitor the Website for up to two years after the Mutually Agreed Upon Consultant validates the Website are free of accessibility errors/violations to ensure Defendant has adopted and implemented adequate accessibility policies. To this end, Plaintiff, through his counsel and their experts, shall be entitled to consult with the Web Accessibility Consultant at their discretion, and to review any written material, including but not limited to any recommendations the Website Accessibility Consultant provides Defendant.

54. If the Website was accessible, Plaintiff and similarly situated blind and visually-impaired persons could independently shop for and otherwise research the Defendant's products via the Website.

55. Although Defendant may currently have centralized policies regarding maintaining and operating its Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

56. Defendant has, upon information and belief, invested substantial sums in developing and maintaining their Website and has generated significant revenue from the Website. These amounts are far greater than the associated cost of making their Website equally accessible to visually-impaired consumers.

57. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Website, violating their rights.

<u>CLASS ACTION ALLEGATIONS</u>

58.  Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a nationwide

class defined as follows:

> All legally blind individuals in the United States who have attempted to access
> Defendant's Website and as a result have been denied access to the equal
> enjoyment of goods and services during the relevant statutory period.

59.  Common questions of law and fact exist amongst Class, including:

   a.  Whether Defendant's Website are a "public accommodation" under the

ADA;

   b.  Whether Defendant's Website denies the full and equal enjoyment of its

products, services, facilities, privileges, advantages, or accommodations to

people with visual disabilities, violating the ADA; and

   c.  Whether Defendant's Website denies the full and equal enjoyment of its

products, services, facilities, privileges, advantages, or accommodations

to people with visual disabilities.

60.  Plaintiff's claims are typical of the Class. The Class, similarly to the Plaintiff, are severely

visually impaired or otherwise blind, and claim that Defendant has violated the ADA by

failing to update or remove access barriers on its Website so either can be independently

accessible to the Class.

61.  Plaintiff will fairly and adequately represent and protect the interests of the Class Members

because Plaintiff has retained and is represented by counsel competent and experienced in

complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

62. Alternatively, class certification is appropriate because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

63. Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 *et seq.*

64. Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

65. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns,leases (or leases to), or operates a place of public accommodation.

> 42 S.C. § 12182(a).

66. Defendant's online retail store is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Defendant's Website is a service, privilege, or

advantage of Defendant's online retail store and a nexus to Defendant's Physical Locations.

67.    The Physical locations, owned and operated by Defendant are public accommodations within the definition of Title III of the ADA, 42 U.S.C. Section 12181(7...).

68.    The Website bears a direct nexus to the Physical Locations, and as such, must be equally accessible to all potential consumers.

69.    By failing to make the Website equally accessible to all potential consumers (including members of the general public that are visually impaired), Defendant has prevented Plaintiff from availing himself of the goods and services that Defendant offers at the Physical Location.

70.    Had Plaintiff been able to access the content, services and information offered on the Website, Plaintiff would have availed himself for the goods and services that Defendants offers at the Physical Location.

71.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

72.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

73.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities,

privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking suchsteps would fundamentally alter the nature of the good, service, facility, privilege,advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

74.    The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

75.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.


**SECOND CAUSE OF ACTION**

76.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

77.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of its

Website, which Defendant owns, operations and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, et seq., prohibiting discrimination against the blind.

78.    These violations are ongoing and Plaintiff seeks to ensure through declaratory and injunctive relief that the Defendant utilizes proper corrective measures in the future to alleviate said violations.

79.    Plaintiff's claim for declaratory relief and injunctive relief serves a distinct purpose from the retrospective relief which Plaintiff seeks based on the claims alleged in Plaintiff's First Cause of Action.

80.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

   a.    A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182, et seq.;

   b.    A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

   c.    A declaration that Defendant owns, maintains and/or operates its Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by the Americans with Disabilities Act, 42

U.S.C. § 12182, et seq.

d.  An order certifying the Class, appointing Plaintiff as Class Representative, and

his attorneys as Class Counsel;

e.  Pre- and post-judgment interest;

f.  An award of costs and expenses of this action together with reasonable attorneys'

and expert fees; and

g.  Such other and further relief as this Court deems just and proper.

Dated: Flushing, NY
November 12, 2024

*/s/ **Uri Horowitz***
*Attorney for Plaintiff*

By: Uri Horowitz, Esq.
14441 70th Road
Flushing, NY 11367
Tel: +1 718-705-8706
Fax: +1 718-705-8705
Email: Uri@Horowitzlawpllc.com